# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LINDRELL E. MALONEY,

               Petitioner,      :      Case No. 3:19-cv-086

    - vs -                              District Judge Walter H. Rice
                                        Magistrate Judge Michael R. Merz

NORM ROBINSON, Warden,
  London Correctional Institution

                                      :

               Respondent.

# REPORT AND RECOMMENDATIONS

This is an action for writ of habeas corpus brought *pro se* by Petitioner Lindrell Maloney to obtain relief from his convictions in the Montgomery County Court of Common Pleas for sexual assaults on his daughter who was under thirteen years old at the time of the offenses.

Under Rule 4 of the Rules Governing § 2254 Cases, the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Habeas corpus cases filed at the Dayton location of Court are randomly assigned to a District Judge and then referred to the undersigned pursuant to General Order Day 13-01.

**Litigation History**

Petitioner was indicted by a Montgomery County grand jury on March 10, 2016, on two counts of rape of a child under thirteen and two counts of sexual battery committed by the natural parent of the victim.[1] The victim in the case is N.S., Maloney's biological daughter. Maloney waived a jury and was tried by the court and convicted on all counts. Represented by new counsel, Maloney appealed, raising two assignments of error: First, that the evidence presented at trial was insufficient to sustain the convictions and that they were against the manifest weight of the evidence. Second, that Maloney received ineffective assistance of trial counsel because counsel (a) failed to subpoena the victim's school and daycare records, (b) failed to convey a plea offer, (c) advised Maloney to waive a jury, (d) failed to subpoena expert testimony concerning DNA analysis and results.

After the Second District decided the case, Maloney filed an Application to Reopen the appeal to show ineffective assistance of appellate counsel for counsel's failure to raise as assignments of error ineffective assistance of trial counsel for (1) failure to object to the State's suppression of Maloney's DNA results from the Bureau of Criminal Identification; (2) failure to present testimony of Amy Dallaire (lab tech); (3) failure to object to unqualified opinionated testimony of state expert Kaiser [and] the trial court's abuse of discretion in allowing that testimony; and (4) failure to object to State['s] failure to present testimony of witness with exculpatory evidence. Maloney did not appeal from the denial of this application (Petition, ECF

---

[1] The procedural history recited here is taken from *State v. Maloney*, Case No. C.A. 27269, 2018-Ohio-316 (2nd Dist. Jan. 26, 2018), appellate jurisdiction declined, 152 Ohio St. 3d 1482 (May 23, 2018).

No. 1, PageID 4).

Maloney filed his Petition in this Court March 22, 2019. He pleads the following grounds for relief:

> **Ground One:** Petitioner's conviction is in violation of the Due Process of Equal Law and Fundamental Fairness as guaranteed by the 5th and 14th Amendment[s], United States Constitution because the evidence was insufficient to support conviction on any of the charges in the indictment.
>
> **Supporting Facts:** Conviction is in violation of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Victim's testimony is not supported by any medical, physical, DNA or any other scientific evidence. The only other available witness besides victim and Petitioner, and provided testimony that contradicted victim testimony.
>
> **Ground Two:** Petitioner's constitutional right of effective assistance of trial counsel, violated as guaranteed by the 6th Amendment, United States Constitution, because of counsel deficient unreasonable performance by failing to 1) reasonably investigate and prepare for trial; 2) failed to communicate plea deal to Petitioner; 3) improperly advised Petitioner to waived [sic] a jury trial; 4) failed to subpoena expert testimony concerning DNA analysis and results; 5) failed to file motion to suppress Petitioner's statements to police without counsel, conviction in violation of *Strickland v. Washington,* 466 U.S. 668, 786-688, 104 S.Ct. 2052 (1984).
>
> **Ground Three:** Petitioner's constitutional right of effective assistance of appellate counsel as guaranteed by the 6th Amendment, United States Constitution, violated by counsel's failure to raise plain and obvious constitutional issues on direct appeal.
>
> **Supporting Facts:** 1) Trial counsel ineffectiveness for failing to object to State's failure to disclose DNA results and DNA finding from B.C.I.; 2) Trial counsel failed to object to State's failure to present Amy Dallaire (lab tech); 3) Trial counsel failed to object to State failure to present the testimony [of] psychiatric [sic] Liz Roock and Dr. Charlotte Hausa; 4) Trial counsel failed to subpoena the cell phone records of Jean Smith and Petitioner.

(Petition, ECF No. 1, PageID 5-8.)

# Analysis

**Ground One: Strength of the State's Evidence**

In his First Ground for Relief, Petitioner claims there was insufficient evidence presented at trial to support a conviction and that his conviction is against the manifest weight of the evidence.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). The Court cannot, therefore, consider on the merits the second part of the First Ground for Relief.

However, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

The Second District's decided this claim on the merits, holding:

[*P36] According to Maloney, while "a rape victim's testimony, *if believed*, may be adequate to meet the State's burden of production of trial, in this case, we must ask ourselves: **What are we to believe**? The victim in this case gave inconsistent versions of what happened, on what day, and how it happened." According to Maloney, N.S.' testimony in the video of her CARE House interview and her trial testimony are inconsistent. According to Maloney, "N.S. has accused her Father of raping her and she cannot even explain *how it happened*. She initially told her step-mother that he used his *finger*. She told the hospital that he used his *finger*. She told the [CARE] House interviewer that he used his *finger*. She adamantly told the trial court that he used his *thumb*." Maloney asserts that N.S. told the CARE House interviewer that K.W. entered the living room in the course of the abuse, but that she told the trial court that K.W. did not enter the living room. Maloney argues that N.S. told the CARE House interviewer that when the abuse occurred on Saturday, J.S. was at work, and she testified in court that J.S. and her baby sister were at her step-grandmother's home on Saturday. Maloney argues that while N.S. testified that she went to the hospital Saturday night, the evidence at trial shows that she was examined on Sunday. Maloney asserts that N.S. "cannot even explain *what* she was wearing" when the abuse occurred. He asserts that while N.S. told the CARE House interviewer that she told J.S. about the abuse on Saturday, she told the CARE House interviewer that she told J.S. the following Sunday.

[*P37] Maloney argues that "N.S. lies to get what she wants." He notes that K.W.'s testimony conflicts with that of N.S. Maloney argues that N.S. wanted to leave her father's home and get out of her punishment. He notes that J.S. "was not concerned about their child's safety." According to Maloney, "the evidence shows that [N.S.'] Father has been nothing more than a caring and loving Father and a disciplinarian when it came to N.S.'s bad behavior." He directs our attention to his and J.S.'s testimony regarding N.S.' propensity to lie. Maloney notes that "the school referred N.S. to Eastway for her issues with anger, aggression, oppositional defiance [dis]order, being argumentative and impulsive." He notes that N.S.' post-traumatic stress disorder diagnosis "was made solely on N.S.'s self-reporting." He argues that the "evidence in this case points more to a manipulative, troubled child making up a story to get out of the house, than her Father raping her." Maloney asserts that N.S.' "testimony is not sufficient to sustain a conviction for rape and sexual battery against her Father,"

[**P38**] The State responds that N.S.' CARE House interview and her testimony at trial "were consistent. N.S. was consistent with

6

respect to the identity of the offender, her relationship to the offender, and the impermissible sexual acts that occurred when she was 12 years old." The State asserts that the definition of "finger" includes the thumb.

* * *

**[\*P40]** R.C. 2907.02(A)(1)(b) proscribes rape and provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.03(A)(5) proscribes sexual battery and provides: "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent * * *."

**[\*P41]** We initially note that we have viewed N.S.' CARE House interview, Joint Exhibit I. Therein, N.S. stated that Maloney is her father and that he is 35 years old. N.S. stated that in the first incident of abuse, after she missed her school bus, Maloney kept saying that "I think things are a game." She stated that he placed his finger "in my hole of my private part." N.S. stated that she was "screaming, crying," and when K.W. woke up, Defendant acted like he was yelling at N.S. "or just whooped me or something, which he didn't." She stated that K.W. went into the bathroom and he "kept continuing to put his finger in my private part." She stated that "when he got done," she went into the bedroom where K.W. had gone and told K.W. that Maloney "put his finger in my private part." She stated that her little sister was also home, who was one year old. N.S. stated that Maloney took her to school, and that she did not tell anyone because he told her not to do so. She stated that "it was hurting all day" and she "had my legs crossed." When asked about the details of the first incident, N.S. stated that Maloney stopped the abuse when K.W. entered the living room, and that he began it again when she went into the bathroom. She stated that she was trying to put her pants on when Maloney called her into the living room. She stated that she then had on only underwear and a pink shirt with a jean jacket. She stated that Maloney's other hand was on her back, "pushing me up" in the course of the abuse. She stated that K.W. went straight to the restroom, and that Maloney "put his finger back in."

**[\*P42]** N.S. stated that prior to the second incident, she got in trouble in school after she hit a girl and received an in-school suspension. She stated that a "few days went by" and on the weekend Maloney was "acting like he was all fun and games," and then he

7

"put his finger in my private part." She stated that he said, "You see how I can be all nice and then switch up on you." She stated that no one else was home at the time. N.S. stated that when J.S. came home on Sunday, she disclosed the abuse to her. N.S. stated that Friday was the first time and Saturday was the last time that Maloney abused her. She stated that prior to the second incident, she and Maloney were watching "The Young and the Restless" when the abuse began, and that "we both like so into" the television show. She stated that Maloney then "held me down," and she stated that she hates to be held down. N.S. stated that Maloney kept "kept pushing it in," and asking her, "does it hurt, does it hurt?" She stated that she kept saying yes, and that he told her to walk around the house. N.S. stated that her little sister was at daycare and J.S. was at work at the time. She stated that J.S. began to cry when she told her about the abuse, and that she called Maloney and asked him if N.S. was telling the truth. N.S. stated that Maloney denied abusing her, and that he sounded very calm. She stated that Maloney has "a really bad anger problem," and that he is "not no calm person." N.S. stated that J.S. said "it had to be true" because of Maloney's calm response. She stated that K.W. put the bed covers over her head when she told her about the first incident.

[*P43] N.S. further stated that Maloney would "whoop" her by making her take off all of her clothes, spread her legs and bend over the couch, and that J.S. told him to stop the practice because "that's not how you whoop a girl." She stated that "it happened every year." N.S. stated that her "private" is her vagina. N.S. stated that she did not have to touch Maloney in the course of the abuse. N.S. stated that she was across the street in J.S.' car when the police arrived. She stated that she and her little sister were both examined at the hospital because J.S. "didn't know if [Maloney] would have touched" her sister. N.S. stated that Maloney called J.S.' cell phone from the police cruiser and that she answered the call while she was in the car. She stated that Maloney said, "you better lie." N.S. said that she responded, "I put it on my sister," and "I'm not gonna lie over something this serious." She stated that she told him, "I'm not about to sit here and lie for you" and hung up on him.

[*P44] Regarding Maloney's assertion that N.S.' testimony was unreliable, we disagree. The inconsistencies, such as whether Maloney abused N.S. with his thumb or his finger, or exactly when the abuse occurred, or the whereabouts of J.S. during the second incident of abuse, or the inconsistencies between N.S.' version of events and K.W.'s testimony, do not render N.S.' consistent version of events unreliable. As the State asserts, N.S.' CARE House interview and her trial testimony were consistent in alleging that

8

Maloney, N.S.' father, on two occasions, sexually abused N.S. in her home, by means of digital penetration, once after she missed theschool bus and returned to the apartment, where her cousin and baby sister were present, attempted to change her clothes, and went into the living room in a shirt and underwear at Maloney's insistence after she told him to "hold on," and once while she and her father were alone in the apartment while she was on the couch, after he held her down. Her interview and testimony were further consistent regarding Maloney's use of corporal punishment and other discipline.

**[\*P45]** N.S.' testimony was corroborated in large part by the testimony of the other witnesses, as the trial court determined. Melinda Kaiser testified that N.S. was referred to her for reported physical, emotional, and sexual abuse at the hands of her father. J.S.' testimony established that N.S. reported the abuse to her. J.S. clearly believed N.S.' allegations as noted by the trial court. J.S. confronted Maloney, reported the allegations to the police, and took N.S. to the hospital. N.S. stated in her CARE House interview that J.S. had N.S.' little sister examined at the hospital as well. J.S. testified consistently with N.S. that N.S. answered J.S.' cell phone in the car while J.S. spoke to the police. J.S. stated that N.S. "didn't really have a story to tell me," and told her "that's all that happened," and N.S. did not accuse Maloney of further sexual abuse beyond the digital penetration. Detective Watson confirmed N.S.' report that she received an in-school suspension on the Friday that she was initially abused after missing the bus. While K.W. adamantly testified that N.S. was motivated by a desire to leave Maloney's residence, she further testified that she spoke to her mother, father and grandmother about this matter, all of whom have an interest in protecting Maloney.

**[\*P46]** Finally, the court had the opportunity to hear all of the witness testimony and view the CARE House interview, and the court credited N.S.' testimony and found that it was corroborated in "several respects." We defer to the trial court's credibility assessment. Accordingly, we conclude that, viewing the evidence in a light most favorable to the State, a rational finder of fact could have found the essential elements of rape and sexual battery proven beyond a reasonable doubt, and that the finder of fact did not lose its way and create a manifest injustice. In other words, Maloney's convictions are supported by sufficient evidence and not against the manifest weight of the evidence. For the foregoing reasons, Maloney's first assignment of error is overruled.

*State v. Maloney*, 2018-Ohio-316, 104 N.E.3d 973 (Ohio App. 2nd Dist. Jan. 26, 2018).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100(2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Second District's decision on the sufficiency of the evidence is not an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). Conviction of sexual assault charges does not require evidence in addition to the direct testimony of the victim. Ground One should therefore be dismissed.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Maloney argues his trial attorney provided ineffective assistance in five different ways. Maloney presented a claim of ineffective assistance of trial counsel on direct appeal and the Second District decided it as follows:

> **[*P48]** According to Maloney, defense counsel "was ineffective for failing to engage in reasonable investigation and preparation." He specifically argues that defense counsel failed to subpoena school and daycare records "to indicate N.S.'s time of late arrival at school or the baby's arrival at daycare," since the "records may have given the trial court a time line to assist as to whether the alleged acts could have occurred within that amount of time." Maloney further asserts that defense counsel "was ineffective for failure to communicate a plea offer." He argues that in addition to the plea offer placed in the record by the prosecutor, "a second plea offer was extended prior to

the second day of trial that was not communicated to Maloney by his trial counsel." Maloney asserts that "[t]his second offer was an off the record offer for a prison term of five (5) years. The original plea offer did not contain an agreement as to sentencing." Maloney asserts that "at the end of the trial, on the record, Maloney even told the Judge that his attorney did not tell him about the ten OR five-year deal that was offered to him until after he was found guilty."

**[\*P49]** Maloney asserts that defense counsel was further ineffective "when he improperly advised Maloney to waive a jury." According to Maloney, "on July 8, 2016, at the pre-trial conference, a jury waiver was signed by Maloney and the Judge did discuss the effect of a jury waiver on the record." He asserts that "it was clear that Maloney was visibly upset with the amount of time since his arrest and the need for a continuance because the DNA evidence was still outstanding and the Doctor was unavailable to testify." Maloney directs our attention to: "CD: July 8, 2016 Pre-Trial Conference and Jury Waiver," which is not part of the record before us. Maloney asserts that "trial counsel advised Maloney to waive a jury because the Judge would go strictly off the evidence. Because Maloney was anxious to have his day in court and thinking that trial counsel would present his evidence, he waived a jury on advice of counsel." Maloney argues that it "is very clear from this record that counsel's advice was bad, especially in light of the evidence NOT presented by him. Thus, Maloney's waiver was not knowingly, intelligently or voluntarily given."

**[\*P50]** Maloney argues defense counsel "was ineffective for failure to subpoena expert testimony concerning DNA analysis and results." He asserts that a "rape kit was performed, and [N.S.'] clothing would have been collected," and that Detective Watson obtained a sample of Maloney's DNA, but that the "DNA results were not a part of the evidence at trial." Maloney argues that at the pre-trial conference on July 8, 2016, the DNA results "were still outstanding. * * * The case was continued for counsel to be afforded an opportunity to review the results prior to trial. * * * However, no DNA comparison results were admitted at trial because the lab professional was not available to testify and the Doctor who performed the rape kit was not available to testify." Maloney asserts that he "complained to the trial court on the record that he felt like he was poorly represented." Finally, Maloney asserts that defense counsel "was ineffective for failure to file a motion to suppress his statements to the police."

**[\*P51]** The State responds that "Maloney cannot demonstrate that these alleged errors would have resulted in the outcome of the

11

proceedings being any different, and, therefore, his second assignment of error fails." Regarding the alleged failure to investigate, the State responds that "even if the school/daycare records indicated that neither N.S. nor the baby were late on the day of the offense, this does not negate the ability of Maloney to have committed the offense." Regarding the plea offer, the State asserts that not "only does the record not establish that an offer was made to Maloney, but the record also does not establish that there was a reasonable probability that he would have accepted the plea even if it had been offered to him."

**[\*P52]** Regarding the jury waiver, the State asserts that "Maloney does not contend that he did not understand the proceedings or indicate how his decision was involuntary," and any "argument that Maloney would have been found not guilty after a jury trial is merely speculative and cannot constitute ineffective assistance of counsel." Regarding defense counsel's alleged failure to subpoena expert testimony concerning DNA analysis and results, the State argues that in "criminal cases, DNA is not always found," and "even if Maloney's DNA was not found in the rape kit, this does not amount to a situation in which the outcome of the trial would have been different had a DNA expert testified at trial." The State asserts that "[w]ithout having a proffer of the documentation as part of the record to consider, this claim should more appropriately be raised in a petition for post-conviction relief and, accordingly, be overruled." Finally, regarding Maloney's assertion that defense counsel was ineffective for failing to file a motion to suppress, the State responds that "[n]othing in the record demonstrates that Maloney was coerced into making any statements or that he did not knowingly, intelligently, and voluntarily agree to speak with police." According to the State, Maloney cannot demonstrate prejudice.

**[\*P53]** As this Court has previously noted:

> To prevail on an ineffective-assistance of counsel claim, a defendant must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that trial counsel's representation fell below an objective standard of reasonableness. *Id.* Prejudice exists and a reversal is warranted only where a defendant shows a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

*State v. Ward*, 2d Dist. Montgomery No. 26773, 2016-Ohio-5354, ¶ 9.

**[\*P54]** "A debatable decision involving trial tactics generally does not constitute a deprivation of effective counsel. *State v. Phillips* (1995), 74 Ohio St.3d 72, 656 N.E.2d 643, 1995-Ohio-171." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2007-Ohio-137, ¶ 50. "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. * * *." *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 37 (2d Dist.).

**[\*P55]** Regarding defense counsel's alleged failure to investigate and subpoena N.S.' school records and her little sister's daycare records, as the Ohio Supreme Court has noted:

> It is axiomatic that effective representation of a client carries with it a burden to investigate. " * * [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland, supra*, 466 U.S. at 691, 104 S.Ct. at 2066. See, also, *Powell v. Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158.

*State v. Bradley*, 42 Ohio St.3d 136, 146, 538 N.E.2d 373 (1989).

**[\*P56]** We conclude that there is nothing in the record to indicate that the school and day care records may have been exculpatory, thereby necessitating their investigation; Maloney merely speculates that the records "*may have* given the trial court a time line to assist as to whether the alleged acts could have occurred within that amount of time." N.S. testified that the abuse that occurred on Friday lasted only a couple of minutes, and that Maloney then drove her to school. N.S., Maloney and K.W. testified that Maloney wanted N.S. to immediately leave the home and not stay there with K.W. Even if the records demonstrated that N.S. arrived on time on Friday, this does not preclude a finding that Maloney had sufficient time to commit the offense. We have no basis to conclude that the records would have altered the outcome of the trial. Accordingly, we find that ineffective assistance in this regard is not established.

**[\*P57]** Regarding defense counsel's alleged failure to communicate a second plea offer, the record does not support Maloney's argument

of ineffective assistance. At the start of trial, the prosecutor advised the court of the *one* offer it extended to Maloney, namely a plea to one count of rape by force, with a mandatory sentence of three to 11 years, along with a plea to gross sexual imposition (under 13), with a non-mandatory sentence of "12 to [60]" months, thereby avoiding a potential life sentence. Defense counsel confirmed to the court that he relayed the offer to Maloney and discussed it with him "in some detail," and Maloney confirmed that he rejected the offer. On the second day of trial, defense counsel indicated that he again submitted the plea offer to Maloney, and that Maloney again rejected the offer. The court indicated that it "wanted [Maloney] to reconsider what the State had offered yesterday [on the record] before we began," and that the court appreciated that defense counsel again spoke to Maloney about the offer. Not until after he was found guilty did Maloney make a vague reference to "the ten or the five-year deal that was offered to me in court." We have no basis to conclude that any additional offer was presented to defense counsel, or that Maloney would have accepted the offer, since he consistently maintained his innocence. For the foregoing reasons, we conclude that Maloney fails to establish his counsel's deficient performance regarding the alleged plea offer.

**[\*P58]** Regarding Maloney's argument that his counsel's performance was deficient in advising him to waive a jury at the July 8, 2016 pre-trial conference, as noted above, a record of the pre-trial conference is not before us. "App.R. 9 requires an appellant to supply the court with a transcript of prior proceedings necessary for disposition of any question on appeal." *State v. Kreuzer*, 2d Dist. Montgomery No. 98-CA-100, 1999 Ohio App. LEXIS 3637, 1999 WL 959206, \* 5 (Aug. 6, 1999). Absent a transcript of the proceedings, we "must presume regularity in the proceedings before the trial court." *Id.*

**[\*P59]** We further note that R.C. 2945.05 provides: "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury." Maloney's waiver is part of the record before us. It provides: "I fully understand that under the laws of this state, I have a constitutional right to a trial by jury. I hereby voluntarily waive and relinquish my right to a trial by jury, and agree to be tried by a Judge." It was signed by Maloney on July 8, 2016 and filed on July 14, 2016. As the Supreme Court of Ohio has indicated:

> A jury waiver must be voluntary, knowing, and intelligent. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 45. \* \* \* A written jury waiver is

"presumptively voluntary, knowing, and intelligent." *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 37. Only a "plain showing that the defendant's waiver was not freely and intelligently made" will rebut that presumption. *Id.*, citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed.268 (1942).

*State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 22.

**[\*P60]** Maloney acknowledges that the trial judge "did discuss the effect of a jury waiver on the record." The court further confirmed, at the start of trial, that "[w]e went through, previously, withdrawal of the jury on this case." The court specifically confirmed with Maloney that it "was your desire and is your desire to waive a jury on this and try all matters to this Court," and Maloney replied, "Yes, sir." Again, we conclude that Maloney fails to demonstrate deficient performance and resulting prejudice based upon his jury waiver.

**[\*P61]** Regarding Maloney's assertion that defense counsel was ineffective for failing to subpoena expert DNA testimony to his prejudice, we conclude that this argument fails for a couple of reasons. We initially note that just as the absence of physical trauma is not determinative of whether sexual abuse occurred, an absence of DNA evidence linking a defendant to a victim of sexual abuse is also not dispositive; "there is no requirement that testimonial evidence of sexual abuse must be corroborated by physical or other evidence." *State v. Barnes*, 2d Dist. Montgomery No. 25517, 2014-Ohio-47, ¶ 31 (holding that while the only evidence of sexual abuse was the victim's testimony, "the fact that there was no DNA evidence of Barnes' sexual contact with H.S. does not render his conviction against the manifest weight of the evidence"), citing *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, ¶ 71 (7th Dist.). Even if we were to conclude that defense counsel's performance was deficient for failing to subpoena expert testimony concerning DNA analysis of N.S.' rape kit, on this record we cannot conclude that the outcome of the trial would have been otherwise had counsel done so.

**[\*P62]** Finally, regarding Maloney's argument that defense counsel was ineffective for failing to file a motion to suppress his statements, we again disagree. "A defendant's statement to police is voluntary absent evidence that his will was overborne and his capacity for self-determination was critically impaired due to coercive police conduct. *Colorado v. Spring* (1987), 479 U.S. 564, 574, 107 S.Ct.

> 851, 93 L.Ed.2d 954; *State v. Otte*, 74 Ohio St.3d 555, 562, 1996-Ohio-108, 660 N.E.2d 711." *State v. Buk-Shul*, 2d Dist. Montgomery No. 23603, 2010-Ohio-3902, ¶ 9. Detective Lingo testified that he read Maloney his rights in the cruiser before speaking to him, that Maloney agreed to speak to him, and no evidence was offered that he admitted to the allegations against him. Detective Watson stated that Maloney was free to leave her interview with him at any time, and that he completed the interview. As the State asserts, there is no evidence that Maloney's statements to police were involuntary due to coercive police conduct or subject to suppression. Further, the adduced statements were exculpatory, not inculpatory. Accordingly, we find no deficiency in defense counsel's failure to file a motion to suppress, a matter of trial strategy, and that Maloney has failed to establish that the outcome of his trial would have been otherwise if counsel had filed the suppression motion.
>
> **[\*P63]** For the foregoing reasons, Maloney's second assignment of error is overruled, and the judgment of the trial court is affirmed.

*State v. Maloney, supra.*

Review of this portion of the Second District's opinion reveals that it applied the correct Supreme Court precedent, *Strickland v. Washington, supra.* Nothing in its opinion persuades the Magistrate Judge that its application was objectively unreasonable. To the extent Maloney relies on material not in the record on direct appeal to show ineffective assistance of trial counsel, he has procedurally defaulted on any such claim because material outside the record must be presented with a petition for post-conviction relief under Ohio Revised Code § 2953.21 and Maloney has not filed such a petition.

The Second Ground for Relief should therefore be dismissed with prejudice.

**Ground Three: Ineffective Assistance of Appellate Counsel**

In his Third Ground for Relief, Maloney asserts he received ineffective assistance of appellate counsel when his appellate attorney failed to raise four additional assignments of error claiming ineffective assistance of trial counsel.

In Ohio, the correct method for raising a claim of ineffective assistance of appellate counsel is by filing an Application to Reopen the appeal under Ohio R. App. P. 26(B). Maloney did so, but the Second District denied relief in a Decision and Entry rendered May 23, 2018. The court declined to address the Application because

> App.R. 26(B) provides the procedure to address alleged ineffective assistance of appellate counsel. Maloney's assigned errors, many of which are repetitive of those assigned in his direct appeal, are addressed to the alleged ineffective assistance of trial counsel and to alleged trial court error. Maloney's assigned errors are not properly before us pursuant to App.R. 26(B), thus, we need not address them. Maloney's application to reopen is denied.

*State v. Maloney*, Case No. C.A. 27269 (2nd Dist. May 17, 2018)(unreported; copy on file with the Montgomery County Clerk of Courts at www.clerk.co.montgomery.oh.us, visited 03/27/2019). Looking behind the Second District's opinion confirms that it correctly read Maloney's 26(B) Application:[2] it raises only claims of ineffective assistance of trial counsel which are not cognizable in a 26(B) Application.

Moreover, the failures of trial counsel that were pleaded in the 26(B) Application are not "plain and obvious constitutional issues" which could have been raised on direct appeal. Each of them depends for a merits determination on facts which were not of record on direct appeal. For example, one cannot tell if it was ineffective assistance of trial counsel to fail to object to the State's failure to disclose DNA results until one knows what the DNA results would have shown. Whether or not presenting lab technician Amy Dallaire would have been helpful or harmful to

---

[2] Also available at the Montgomery County Clerk of Courts website.

Maloney's case cannot be known until one knows what she would have testified to. The same thing is true of the two other claims of ineffective assistance of trial counsel made here and in the 26(B) Application.

In Ohio a claim of ineffective assistance of trial counsel (or any other constitutional claim) which depends on facts outside the direct appeal record must be made by a petition for post-conviction relief in the trial court under Ohio Revised Code § 2953.21. As noted above, Maloney has never filed such a petition and the time within which he could have done so has expired. Therefore, the Third Ground for Relief should also be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 27, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the

proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).